PER CURIAM.
 
 *
 

 | ]We granted certiorari in this case to determine (1) whether the court of appeal erred in affirming the judgment of the district court granting plaintiffs’ motion for judgment notwithstanding the verdict and awarding statutory penalties and attorney fees; and (2) whether the court of appeal erred in reversing the judgment of the district court denying plaintiffs’ motion for judgment notwithstanding the verdict, and increasing the jury’s damage award. For the reasons that follow, we now reverse the court of appeal’s judgment in part.
 

 UNDERLYING FACTS
 

 On November 13, 2004, James Las-trapes was involved in an automobile accident (hereinafter referred to as the “2004 accident”), in which the rear door of his 1999 Chevy van was struck by a vehicle driven by Lessie Vizinat as she attempted a left-hand turn. Mr. Lastrapes declined emergency medical care at the scene, but two days later he visited his family physician, Dr. Kirk Elliot, and complained of neck pain. Dr. Elliot initially diagnosed cervical acute myofascial strain, and recommended physical therapy three times per week.
 

 |2Mr. Lastrapes regularly attended physical therapy until January of 2005. On February 18, 2005, Mr. Lastrapes underwent an MRI of the cervical spine. According to the report of radiologist, Dr. Robert L. Lapidus, Mr. Lastrapes’ MRI indicated multi-level spondylosis, C3-C4 spurring with posterior subligamentous disc bulge partially effacing ventral sub-arachnoid space, C5-C6 mild AP diameter stenosis of the central spinal canal, but no focal disc herniation. Mr. Lastrapes was referred to Dr. Steve Rees, a pain management specialist, who diagnosed him with chronic low back pain status post MVA, and quadratus lumborum myofascial pain syndrome. From August 2005 to January 4, 2006, Mr. Lastrapes received at least five treatments for his neck and back pain, including trigger point injections and nerve blocks.
 

 On January 24, 2006, fourteen months after the 2004 accident, Mr. Lastrapes was involved in a second accident (hereinafter referred to as the “2006 accident”), in
 
 *661
 
 which he rear-ended another vehicle. Mr. Lastrapes did not inform his doctors of the 2006 accident, but he did notify his uninsured motorist carrier, Progressive Security Insurance Company (“Progressive”). He continued to receive treatment from Dr. Rees, including a steroid injection, trigger point injections, and nerve blocks. He was then referred to an anesthesiologist and pain management specialist, Dr. Sanjiv Jindia, who administered four cervical epidural steroid injections to Mr. Las-trapes from December 2006 through October 2007.
 

 On June 7, 2007, Mr. Lastrapes underwent another MRI of the cervical spine. According to the radiology report of Dr. Lapidus, there was “no significant change compared with February 18, 2005 examination.”
 

 Meanwhile, on July 10, 2007, Mr. Las-trapes consulted an orthopedic surgeon, Dr. George Williams, who diagnosed him with cervical herniated nucleus pulposus. Based on the medical history provided by Mr. Lastrapes, which notably omitted any |,(¡mention of the 2006 accident, together with the MRI results from 2005 and 2007, Dr. Williams recommended that plaintiff undergo neck surgery.
 
 [1]
 
 Dr. Williams estimated the cost of surgery to be $94,300 to $114,300, exclusive of follow-up care beyond three months. Like Dr. Lapidus, Dr. Williams concluded there was no evident change in Mr. Lastrapes’ cervical spine between the 2005 and 2007 MRIs. Unlike Dr. Lapidus, Dr. Williams concluded the MRI films revealed disc herniations.
 

 PROCEDURAL HISTORY
 

 In November 2006, Mr. Lastrapes and his wife filed the instant suit against his uninsured motorist carrier, Progressive Security Insurance Company (“Progressive”), seeking damages for mental and physical pain and suffering, past and future medical expenses, loss of enjoyment of life, and loss of consortium arising from the 2004 accident.
 
 [2]
 

 In January 2008, Progressive’s claims adjuster, Sheryl Tardo, received Dr. Williams’ July 10, 2007 report in which he recommended surgery. Ms. Tardo declined to make an unconditional UM tender to plaintiffs, and did not schedule Dr. Williams’ deposition or otherwise follow up with him.
 

 Thereafter, plaintiffs filed their first supplemental and amending petition for damages, alleging Progressive was “arbitrary and capricious for failing to timely pay benefits to plaintiffs under the uninsured/underinsured portion of its policy.” Plaintiffs sought penalties and attorney fees.
 

 The case proceeded to a three-day jury trial. At the conclusion of trial, the jury returned a verdict awarding plaintiff $88,000 in past medical expenses, and $125,00014in past pain and suffering. The jury declined to award plaintiffs any damages for future medical expenses, future pain and suffering, past mental anguish, loss of enjoyment of life, loss of consortium, and statutory penalties and attorney fees.
 

 Plaintiffs moved for a judgment notwithstanding the verdict (“JNOV”), and alternatively for additur and/or new trial. The district court denied plaintiffs’ motion for additur, but granted a JNOV in part, finding Progressive was arbitrary and capricious in its handling of the UM claim. In
 
 *662
 
 particular, the district court found Progressive acted contrary to its duty of good faith and fair dealing by failing to tender payment for the surgery recommended by Dr. Williams within thirty days of receiving his report. Accordingly, the district court awarded plaintiffs $72,575 in penalties, and $24,192 in attorney fees.
 

 Progressive appealed. Plaintiffs answered the appeal, seeking an increase in the amount of damages, and seeking damages for the items the jury declined to award. The court of appeal affirmed the district court in part, and reversed in part.
 
 Lastrapes v. Progressive Security Insurance Company,
 
 2009-367 (La.App. 3 Cir. 12/9/09), 24 So.3d 993.
 

 In its opinion, the court of appeal affirmed the jury’s award of $88,000 for past medical expenses, and $125,000 for past pain and suffering. It also affirmed the district court’s judgment granting JNOV and awarding plaintiffs $72,575 in penalties, and $24,192 in attorney fees.
 

 However, the court of appeal went on to find the jury’s failure to award future medical expenses, future pain and suffering, loss of enjoyment of life, and loss of consortium was “not supported by the record and is an abuse of the jury’s vast discretion.” Accordingly, the court of appeal reversed “the trial court’s refusal to award additional sums for loss of consortium and future damages.” It then proceeded |fito render judgment in favor of plaintiffs in the amount of $100,000 for future medical expenses, $50,000 for future pain and suffering, and $20,000 for loss of enjoyment of life. Additionally, the court of appeal rendered judgment in favor of Mrs. Lastrapes in the amount of $10,000 for loss of consortium.
 

 Upon Progressive’s application, we granted certiorari to consider the correctness of these rulings.
 
 Lastrapes v. Progressive Security Insurance Company,
 
 10-0051 (La.4/9/10), 31 So.3d 375.
 

 DISCUSSION
 

 Although Progressive presents separate assignments of error concerning the district court’s award of penalties and attorney fees and the court of appeal’s award of additional damages, both issues have their genesis in JNOV rulings. In
 
 Joseph v. Broussard Rice Mill, Inc.,
 
 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99, we explained the principles to be applied in determining whether JNOV was appropriate:
 

 JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
 

 | fiWith these precepts in mind, we now turn to an examination of the record to determine whether the district court’s rulings granting the JNOV as to penalties
 
 *663
 
 and attorney fees and denying it as to additional damages were correct.
 

 Statutory Penalties and Attorney Fees
 

 It is well-settled that a plaintiff seeking penalties and attorney fees must prove the insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse.
 
 Lewis v. State Farm Insurance Company,
 
 41,527 (La.App. 2 Cir. 12/27/06), 946 So.2d 708;
 
 Holt v. Aetna Cas. & Sur. Co.,
 
 28,450 (La.App.2d Cir.9/3/96), 680 So.2d 117,
 
 writs denied,
 
 96-2515, 96-2523 (La.12/6/96), 684 So.2d 937, 938.
 

 The jury, having heard the evidence at trial, declined to make any award to plaintiffs for penalties and attorney fees. Applying the JNOV standard, we find the record supports the conclusion that a reasonable juror could have concluded Progressive’s actions were not completely unjustified or unreasonable.
 

 The crux of plaintiffs’ argument is that Progressive’s actions were unreasonable because it took no action after receiving Dr. Williams’ report recommending surgery. However, Progressive’s adjuster, Ms. Tardo, testified she did not make an unconditional tender to plaintiffs because she questioned whether the surgical recommendation was related to the 2004 accident. She believed reasonable minds could differ on whether the 2004 accident caused Mr. Lastrapes’ neck injury. Ms. Tardo based this conclusion on multiple factors, including Mr. Lastrapes’ failure to notify Dr. Williams of his 2006 accident, and the fact Dr. Williams’ report showed Mr. Lastrapes’ physical examination was normal, with no complaints of neck or back 17pain. In addition, Dr. Williams did not expressly relate the need for surgery to the 2004 accident. Furthermore, Ms. Tar-do believed Mr. Lastrapes’ 2005 MRI did not reveal the injuries diagnosed by Dr. Williams.
 

 In addition, Ms. Tardo testified Mr. Las-trapes’ frequency of treatment increased after the 2006 accident, tending to support her suspicions that his neck injuries may have worsened after the 2006 accident. Notably, because Mr. Lastrapes did not inform his doctors of the second accident, the medical records do not attribute any worsening of his condition to the 2006 accident.
 

 We have held bad faith should not be inferred from an insurer’s failure to make a timely tender when there is a reasonable and legitimate question as to the extent and causation of a claim.
 
 Guillory v. Lee,
 
 09-0075 at p. 32 (La.6/26/09), 16 So.3d 1104, 1127. Applying this reasoning, we believe the jury could reasonably conclude Progressive was in good faith when it questioned the extent and causation of Mr. Lastrapes’ ongoing complaints, and questioned whether the need for surgery was causally related to the 2004 accident. In addition, the jury could reasonably conclude that Progressive was justified in relying on this good-faith belief to defend the claim and refuse to make a tender within the statutory time limits.
 

 In sum, having reviewed the record as a whole, we are unable to say the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs that reasonable persons could not arrive at a contrary verdict. Accordingly, the district court erred in granting JNOV in favor of the plaintiffs on the issue of penalties and attorney fees, and the court of appeal erred in affirming that judgment.
 

 \ ¡Additional Damages
 

 The jury declined to make any award for future medical expenses, future pain and suffering, loss of enjoyment of life, and loss of consortium. Plaintiffs moved for JNOV on this issue. The district court denied the motion, but the court
 
 *664
 
 of appeal reversed and awarded damages for future medical expenses, future pain and suffering, loss of enjoyment of life, and loss of consortium.
 

 In making this determination, the court of appeal implied it was inconsistent for the jury to determine Mr. Lastrapes suffered injuries as a result of the 2004 accident, but not accept his claims that his neck problems were caused by the accident and that he would undergo the cervical decompression and fusion in the future. However, in
 
 Wainwright v. Fontenot,
 
 00-0492 (La.10/17/00), 774 So.2d 70, we held an award in one category of damages does not automatically require an award in others.
 

 Plaintiffs’ argument with regard to future damages hinges on the assertion that Mr. Lastrapes’ 2004 accident resulted in a cervical disc herniation. They claimed this injury would result in Mr. Lastrapes’ future pain and suffering as well as necessitate future surgery.
 

 However, Progressive countered plaintiffs’ assertions with evidence suggesting Mr. Lastrapes’ 2004 accident did not result in a cervical disc herniation. In particular, Progressive relied on the February 18, 2005 MRI report of Dr. Lapidus which did not show any disc injury. Progressive also produced evidence revealing Mr. Las-trapes was not candid with his doctors in disclosing his 2006 accident.
 

 Considering the conflicting evidence in the record, we cannot say the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs that reasonable jurors could not arrive at a contrary verdict. The district court properly denied ] plaintiffs’ motion for JNOV with regard to future pain and suffering and future medical expenses, and the court of appeal erred in reversing this ruling.
 

 Similarly, we believe the jury was reasonable in rejecting plaintiffs’ claims for loss of enjoyment of life. In finding the jury abused its discretion in denying damages on this claim, the court of appeal cited Mr. Lastrapes’ testimony that he has suffered a loss of his ability to travel, to maintain his yard, and to do many of the other activities he enjoyed most. However, the record contains evidence that many of Mr. Lastrapes’ activities were limited by his medical problems and disabilities which pre-dated the 2004 accident. In addition, during the time between the 2004 accident and the 2006 accident, Mr. Lastrapes and his wife took several vacations (including vacations to Las Vegas, San Francisco, Canada, New York and New England) and he testified to doing work around his camp and home. In light of this evidence, we cannot say the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs that reasonable jurors could not arrive at a contrary verdict. The district court properly denied plaintiffs’ motion for JNOV with regard to plaintiffs’ claims for loss of enjoyment of life, and the court of appeal erred in reversing this ruling.
 

 Finally, the court of appeal found the jury erred in failing to award Mr. Las-trapes’ wife damages for loss of consortium. The court of appeal relied on testimony from Mr. Lastrapes’ wife indicating the couple was “no longer intimate and that most of their activities had been curtailed by his chronic pain.”
 

 As discussed above, there was evidence in the record supporting the conclusion that to the extent Mr. Lastrapes’ activities were limited, it was due to his pre-accident disabilities. Moreover, Mr. Lastrapes and his wife continued to travel after the 2004 accident. To the extent Mr. Lastrapes’ wife testified the couple’s relationship and sex life was affected, the jury could have concluded any changes in their relation
 
 *665
 
 ship Imwere not a result of the accident.
 
 See VaSalle v. Wal-Mart Stores, Inc.,
 
 01-0462 (La.11/28/01), 801 So.2d 331 (holding jury properly declined to award damages for loss of consortium despite testimony from a husband that his wife “was hard to live with” and that the couple was “grouchier with each other” and “their sex life was not as active as it once was”). In light of this evidence, we cannot say the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs that reasonable jurors could not arrive at a contrary verdict. The district court properly denied plaintiffs’ motion for JNOV with regard to plaintiffs’ claims for loss of consortium, and the court of appeal erred in reversing this ruling.
 

 DECREE
 

 For the reasons assigned, the judgment of the court of appeal affirming the district court’s judgment ‘granting judgment notwithstanding the verdict and awarding penalties and attorney fees is reversed. In addition, the judgment of the court of appeal reversing the district court’s denial of judgment notwithstanding the verdict and awarding additional damages for future medical expenses, future pain and suffering, loss of enjoyment of life, and loss of consortium is reversed. In all other respects, the judgment of the court of appeal is affirmed.
 

 REVERSED IN PART, AFFIRMED IN PART.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . Dr. Williams recommended plaintiff undergo a three level cervical decompression and fusion and discography of the lower lumbar spine.
 

 [2]
 

 . Previously, plaintiffs settled with Ms. Vizi-nat’s insurer for the policy limits.